**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | ) CHAPTER 11 </br> ) </br> ) Case No. 08-11525 (BLS) </br> ) </br> ) (Jointly Administered) </br> ) |
| SEMCRUDE, L.P., et al., | |
| Debtors. | |
| | |
| STATEWIDE CRUDE, INC., | ) </br> ) </br> ) |
| Plaintiff, | ) </br> ) |
| v. | ) Adv. Proc. No. 08-51456 </br> ) |
| SEMCRUDE, L.P and BANK OF AMERICA, N.A., | ) Re: Adv. Dkt. Nos. 1, 4, 5, 8, 9, </br> ) 24, 25, 31, and 32 </br> ) </br> ) |
| Defendants. | ) |

**OPINION**

Before the Court are the Defendants' Motions to Dismiss [Docket Nos. 4 and 5] the adversary proceeding in the above-captioned case. Because the Plaintiff has failed to state a claim upon which relief can be granted, the Defendants' motions to dismiss will be granted.

**I. BACKGROUND**

On July 22, 2008 (the "Petition Date"), SemGroup, L.P. and certain direct and indirect subsidiaries each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Code"). SemCrude, L.P., ("SemCrude") is one such subsidiary. SemCrude purchases crude oil from numerous producers of oil,

operators of oil wells, and interest holders in such wells (collectively, "Producers"), then sells that oil to refiners and other parties for resale.  Plaintiff Statewide is one of many Producers in Texas that delivered oil to SemCrude in the months leading up to SemCrude's bankruptcy filing, and that now asserts, pursuant to Texas law, lien rights on certain of SemCrude's assets. Defendant Bank of America, as administrative agent for SemCrude's pre-petition lenders, asserts a duly perfected security interest in substantially all of SemCrude's property.

Shortly after its bankruptcy filing, SemCrude received hundreds of reclamation demands from Producers who claimed not to have been paid for oil allegedly sold and delivered to SemCrude. Producers also filed numerous adversary proceedings and emergency motions with this Court. By Order dated October 15, 2008, the Court directed the U.S. Trustee to appoint and constitute a committee to represent these parties' interests (the "Producers Committee")[Case No. 08-11525, Docket No. 1774].

In an attempt to prevent a multiplicity of actions and preserve the resources of the Debtors and the Court, the Debtors filed a motion for authorization to establish omnibus procedures for, among other things, the resolution of the rights and priorities of the Producers' claims pursuant to sections 105(a) and 362 of the Code and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure [Docket No. 600]. After extensive negotiations, the Debtors and the Producers reached agreement on a set of procedures

that could be used to resolve these issues, and the Court entered an order (the "Procedures Order") adopting the proposed procedures [Docket No. 1557]. The Procedures Order, in relevant part, provides that there will be one collective adversary proceeding for each state in which goods were sold to the debtors, that Producers from each state must coordinate among themselves the prosecution of such proceedings, and that such proceedings will be the sole and exclusive mechanism by which the Court will determine the validity and priority of all Producers' claims.

Pursuant to these procedures, the Texas Producers filed a complaint on October 1, 2008, asking the Court to determine their rights and priorities under Texas's producer lien statute, Title 1, Section 9.343 of the Texas Business & Commerce Code. Statewide never joined in that proceeding, though in its complaint initiating this proceeding (the "Complaint") [Docket No. 1] it announced its intention to do so.

Statewide now asks this Court to determine the validity, priority and extent of its liens under a separate Texas statute, Chapter 56 of the Texas Property Code ("Chapter 56"). Statewide claims this action is not barred by the Procedures Order because Statewide seeks to determine its rights under this separate statute. Statewide also requests that the Court declare its asserted state lien rights superior to any contrary provisions of this Court's final debtor-in-possession financing order [Docket No.

3

1420]. Finally, Statewide requests that the Court award it attorney's fees "pursuant to Texas Natural Resources Code, the Federal Declaratory Judgement Act and other applicable law" [Complaint, ¶ 24].

SemCrude and Bank of America have each filed motions to dismiss, arguing that Statewide seeks relief under an inapplicable statute and that Statewide's complaint violates the Procedures Order.

## II. JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(K).

## III. STANDARD OF REVIEW

SemCrude and Bank of America have filed motions to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b)(6).

A Rule 12(b)(6) motion serves to test the sufficiency of the factual allegations in a plaintiff's complaint. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).

"In deciding a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff." Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004); see also Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) ("[The Supreme Court in Twombly] reaffirmed that, on a Rule 12(b)(6) motion, the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."). All reasonable inferences are drawn in favor of the plaintiff. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982).

"Matters of statutory construction," however, "are questions of law for the court to decide rather than issues of fact." Lee v. Mitchell, 23 S.W.3d 209, 212 (Tex. App. 2000). Courts may grant motions to dismiss under Rule 12(b)(6) where the facts pled, taken as true, cannot support relief as a matter of law. See Segal v. Geisha NYC, LLC, 517 F.3d 501, 505 (7th Cir. 2008) (adequately pled complaint "might still warrant dismissal under Rule 12(b)(6) if the facts pled cannot result in any plausible

relief"); Reg'l Airport Auth. of Louisville v. LFG, LLC, 460 F.3d 697, 711 (6th Cir. 2006)(affirming district court's dismissal of equitable claim where there existed no adequate remedy at law); see also British Telecomm. v. SBC Commc'ns, Inc., 2004 WL 5264272, at *3 (D. Del. Feb. 24, 2004) (granting 12(b)(6) motion to dismiss because "the court cannot honestly say that the facts at bar fit within the meaning of the statute as illuminated by its legislative history").

## IV. DISCUSSION

### A. Applicability of Texas Property Code

Statewide asks the court to determine the validity, extent, and priority of its lien under Chapter 56 of the Texas Property Code.

Section 56.002 provides as follows: "A mineral contractor or subcontractor has a lien to secure payment for labor or services related to the mineral activities." Tex. Prop. Code Ann. § 56.002 (Vernon 2007). Statewide argues that it is a mineral contractor or subcontractor and that it has such a lien. Section 56.001 defines a "mineral contractor" as "a person who performs labor or furnishes or hauls material, machinery, or supplies used in mineral activities under an express or implied contract with a mineral property owner . . . ." Tex. Prop. Code Ann. § 56.001(2) (Vernon 2007). Statewide avers that it delivered 35,262.12 barrels of crude oil, valued at approximately $4.2 million, to

6

various points along SemCrude's pipeline, and by so doing, claims to have "furnishe[d] or haul[ed] material . . . used in mineral activities" under a contract with a mineral property owner, within the meaning of the statute.  Id.  The statute defines mineral activities as "digging, drilling, torpedoing, operating, completing, maintaining, or repairing . . . an oil or gas pipeline."  Tex. Prop. Code Ann. § 56.001(1) (Vernon 2007). Statewide points out that SemCrude is surely a mineral property owner under the statute's definition: "[A]n owner of . . . an oil or gas pipeline."  Tex. Prop. Code Ann. § 56.001(3) (Vernon 2007).  Thus, putting it all together, Statewide claims to have a lien on certain of SemCrude's pipelines because it "furnishe[d] or haul[ed] materials . . . used in . . . operating an oil or gas pipeline . . . under an express or implied contract" with Semcrude, a mineral property owner.

SemCrude and Bank of America argue that Chapter 56 is inapplicable to Statewide.  They note that the statute grants a lien only for a mineral contractor's "labor or services," not for sales of oil.  They further argue that case law and legislative history make clear that oil producers like Statewide are not the parties intended to be protected by the statute.

### 1. "**Labor or Services**"

Statewide has argued that its transactions with SemCrude fit within the definitions of "mineral contractor," "mineral

activities," and "mineral property owner" in section 56.001. These terms are meaningless, however, until reinserted into section 56.002, where they appear in context: "A mineral contractor or subcontractor has a lien to secure payment for <u>labor or services</u> related to the mineral activities." Tex. Prop. Code Ann. § 56.002 (Vernon 2007) (emphasis added).

Thus, even if the Court were to accept Statewide's reading of the definitions in section 56.001, the Court would also have to find that Statewide's transactions with SemCrude constituted "labor or services" as opposed to routine sales of goods. Statewide, by its own admission, "sold and delivered crude oil" to SemCrude [Complaint, ¶ 9]. It is unlikely that the Texas legislature intended to include sales of oil in "labor or services related to the mineral activities," especially in light of Texas's separate statute protecting sellers of oil and gas. <u>See</u> Tex. Bus. & Comm. Code § 9.343 (Vernon 2007). Indeed, as discussed below, the case law and legislative history related to Chapter 56 make clear that it did not so intend.

**2. Case Law and Legislative History**

Research has not revealed, and the parties have not cited, any case holding that Chapter 56 applies to sales of oil. Statewide cites to cases holding that Chapter 56 applies to suppliers of material more generally. <u>See</u> <u>In re MEG Petroleum Corp.</u>, 61 B.R. 14, 18 (Bankr. N.E. Tex. 1986) (Chapter 56 "was

enacted to give 'mineral contractors' a lien . . . to secure payment for materials and services which they furnish in connection with mineral activities on the tract."); see also Cont'l Casing Corp. v. Samedan Oil Corp., 751 S.W.2d 499 (Tex. 1988) (finding a lien in favor of a pipe supplier); Paramount Pipe & Supply Co., Inc. v. Ulrich Muhr, 749 S.W.2d 491 (Tex. 1988) (recognizing a lien to secure payment for materials).

The types of delivered materials giving rise to liens under Chapter 56 are invariably materials used on the tract for construction or servicing of the mineral property itself. See McCarty v. Halliburton Co., 725 S.W.2d 817 (Tex. App. 1987) ("frac tanks" used to drill wells); Hoffman v. Cont'l Supply Co., 120 S.W.2d 851 (Tex. App. 1938), rev'd on other grounds, 144 S.W.2d 253 (Tex. App. 1940) (oil well casing and pipe); Keystone Pipe & Supply Co. v. Wright, 37 S.W.2d 227 (Tex. App. 1931) (oil well casing and pipe); Clayton v. Bridgeport Mach. Co., 33 S.W.2d 787 (Tex. App. 1930) (tools and supplies used to drill wells). Tools, pipe, and oil tanks all relate to "works of improvement or construction" performed on the mineral tract. See Big Three Welding Equip. Co. v. Crutcher, Rolfs, Cummings, Inc., 229 S.W.2d 600, 603 (Tex. 1950).

The legislative history of Chapter 56 does not support the provision of liens to parties who sell and deliver oil for distribution off the tract. The committee report cites the

9

following purpose for the bill: "[T]he many thousand of oil field workers in Texas have no kind of lien whatever on anything produced by their labor to secure the pay for their work . . . . This bill further in connection with labor, gives a lien to the material man who furnishes material, machinery, and tools to the oil field operator . . . ." H.R. Rep., Jan. 29, 1917, Labor Comm.(Tex.).

Taken together, the relevant cases and legislative history support the logical result that laborers and providers of materials for improvement or construction on the tract should be given a lien on the mineral property benefitted by their labor and services. An oil well builder is given lien rights in the well he constructs; a pipe supplier enjoys lien rights on the pipe he supplies.[1]

Statewide, on the other hand, asserts a lien on sections of SemCrude's pipeline merely because it delivered oil to those sections of the pipeline. Such a lien is supported neither by the statute nor by the cases interpreting it.

---

[1] Such liens are commonly known as "laborer's and materialman's liens," and courts construing Chapter 56 and its predecessor statutes often refer to them in these terms. See, e.g., Clayton, 33 S.W.2d at 788 (Tex. App. 1930); Cont'l Supply Co. v. Gillespie, 269 S.W. 859, 859 (Tex. Ct. App. 1925); Williams v. Magouirk, 235 S.W. 640, 640 (Tex. App. 1921).

**B. The Procedures Order**

Defendants request that the Court find the filing of the Complaint to have violated the Procedures Order. The Procedures Order, by its plain terms, was established as the sole mechanism "for the resolution of the rights and priorities of [Producers] asserting entitlement under state laws and/or statutes allegedly providing the Producers with lien rights" [Procedures Order 1, 3]. Nevertheless, in-court statements on the record establish that "the validity and priority of [certain warehousemen's and carrier's liens] are not impacted in this procedure" [Hr'g Tr. 42:7-43:7, Sept. 17, 2008]. Based on such statements, Statewide could have had a good faith belief that its Complaint did not violate the Procedures Order. The question is now moot because Statewide's Complaint will be dismissed on other grounds.

## IV. <u>CONCLUSION</u>

Because Statewide seeks relief under Chapter 56, which is inapplicable here, Statewide has failed to state a claim upon which relief may be granted and the Defendants' motions to dismiss are granted.

An appropriate order follows.

By the Court,

_____

Dated: October 9, 2009          Brendan Linehan Shannon
United States Bankruptcy Judge